## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Civil Action No. 21-cv-2861-WJM-KLM

ASMA HANIF ABDUL KARIM,

      Plaintiff,

v.

JOHN ALLEN, in his official capacity as Director, U.S. Citizenship and Immigration
Services, Texas Service Center,
MERRICK B. GARLAND, in his official capacity as Attorney General of the United
States of America,
ALEJANDRO MAYORKAS, in his official capacity as Secretary, U.S. Department of
Homeland Security, and
UR MENDOZA JADDOU, in her official capacity as Director, U.S. Citizenship and
Immigration Services,

      Defendants.

---

### ORDER DENYING PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT AND AFFIRMING USCIS'S DENIAL OF PLAINTIFF'S EB-1 VISA PETITION

---

Plaintiff Asma Hanif Abdul Karim brings an administrative appeal seeking judicial

review of the United States Citizenship and Immigration Services ("USCIS") decision to

deny her petition for an employment-based first-preference visa. (ECF No. 1.)  She has

filed her Opening Brief for Summary Judgment.[1]  (ECF No. 15.)  Defendants filed a

response brief.  (ECF No. 18.)  For the following reasons, the Court denies Plaintiff's

request for summary judgment.

---

[1] Although Plaintiff titles her opening brief "Opening Brief for Summary Judgment,"
motions for summary judgment shall not be filed in administrative appeals for review of final
agency decisions.  *See* D.C.COLO.LAPR 16.1(c).  Plaintiff's brief is properly construed as an
opening brief on the merits.  She concedes as much when she states that the standard set forth
in Federal Rule of Civil Procedure does not apply in this case and that the APA standards
govern.  (ECF No. 15 at 6.)

# I. LEGAL STANDARD

Federal Rule of Civil Procedure 56, which governs summary judgment, operates differently in an APA case.  Instead of considering whether there are genuine disputes of material fact, the district court "sits as an appellate tribunal."  *Am. Bioscience Inc., v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  "The entire case on review is a question of law," and a court should only consider "arguments about the legal conclusion to be drawn about the agency action."  *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  This review is, therefore, based on "the administrative record already in existence" at the time of the agency action.  *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

Under the APA, a reviewing court must hold unlawful and set aside agency actions, findings, and conclusions that are arbitrary and capricious.  5 U.S.C. § 706(2)(A); *see also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).  This is a "narrow" standard of review; the court assesses if the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

In doing so, the court is "highly deferential" and "presumes agency action to be valid."  *Defs. of Wildlife & Ctr. for Biological Diversity v. Jewell*, 815 F.3d 1, 9 (D.C. Cir. 2016) (citation omitted).  The court should, therefore, take care not to "substitute its own judgment for that of the agency."  *State Farm*, 463 U.S. at 43.  Instead, it should uphold

agency action "if the agency's path may reasonably be discerned," even if the decision is not fully explained. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). If a court cannot evaluate the challenged agency action on the basis of the record before it, "the proper course . . . is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

## II. STATUTORY AND REGULATORY FRAMEWORK[2]

### A.   Overview of Employment-Based Immigration

The Immigration and Nationality Act ("INA") provides for the classification of aliens applying for admission to the United States. In general, aliens seeking to immigrate to the United States are required to have an immigration preference, usually either a family-based or an employment-based preference. *See generally* 8 U.S.C. § 1153. In 1990, Congress sought to facilitate the immigration of highly talented aliens to the United States by creating a new employment-based immigration preference for aliens of "extraordinary ability in the sciences, art, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation." Immigration Act of 1990 ("IMMACT"), Pub. L. No. 101-649, 104 Stat. 4978, 4987-88 (November 29, 1990) (amending 8 U.S.C. § 1153). Aliens who qualify for this preference are referred to as "employment-based first-preference immigrants," or colloquially as "EB-1" immigrants because they are classified under the first heading of

---

[2] Because there is no apparent dispute concerning the statutory and regulatory framework in this appeal, the Court takes this section directly from Defendants' brief. (ECF No. 17 at 2–6.)

the employment-based section of the INA: 8 U.S.C. § 1153(b)(1).

The EB-1 category is coveted because it is exempted from certain job-offer and labor-certification requirements applicable to other employment-based preferences, and no sponsoring employer is required.  *See Amin v. Mayorkas*, 24 F.4th 383, 387 (5th Cir. 2022); *see also* 2 Gordon & Mailman, Immigration Law and Procedure § 5.01[2] at 25-5 (1996).  The INA provides for the allocation of immigrant visas to such aliens if "the alien seeks to enter the United States to continue work in the area of extraordinary ability," and "the alien's entry into the United States will substantially benefit prospectively the United States."  8 U.S.C. § 1153(a)(b)(1)(A).

**B.    The "Extraordinary Ability" Regulation and Its Interpretation**

The statute does not define "extraordinary ability."  *See* 8 U.S.C. § 1101(a) (definitions section).  However, in 1991, the Immigration and Naturalization Service issued a rule defining "extraordinary ability" to mean "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor."  56 Fed. Reg. 60,897, 60,906 (INS) (Nov. 29, 1991) (codified at 8 C.F.R. § 204.5(h)(2)).  In the preamble to the final rule, the agency indicated that "extraordinary ability" is a higher standard than "exceptional ability," which is the standard for the second-preference category under 8 U.S.C. § 1153(b)(2)(A).  *Id.* at 60,898.

To meet the more-stringent definition of "extraordinary ability," a petitioner must submit evidence that she "has sustained national or international acclaim and that . . . her achievements have been recognized in the field of expertise."  8 C.F.R. § 204.5(h)(3).  Such documentation may include evidence of a one-time achievement— that is, a major, internationally recognized award such as an Olympic gold medal or a Nobel or Pulitzer Prize, or it may include evidence that satisfies at least three of ten

specific criteria intended to identify benchmarks for determining "extraordinary ability."

*Id.* Four of the ten criteria are relevant in this case:[3]

> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
>
> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;
>
> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other

---

[3] The other six criteria are:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
>
> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
>
> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien' work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
>
> …
>
> (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;
>
> …
>
> (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or
>
> (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3).

major media;

. . .

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation.

8 C.F.R. § 204.5(h)(3).  Should a petitioner believe that the enumerated criteria "do not readily apply to [her] occupation, the petitioner may submit comparable evidence to establish [her] eligibility."  8 C.F.R. § 204.5(h)(4).

In adjudicating EB-1 petitions, USCIS follows a two-step analysis of a petitioner's evidence.  *See Amin*, 24 F.4th at 388; *Kazarian v. USCIS*, 596 F.3d 115 (9th Cir. 2010).  First, USCIS determines whether the petitioner provided evidence of a one-time achievement or evidence satisfying at least three of the ten regulatory criteria.  *Amin*, 24 F.4th at 388.  If so, then USCIS considers the totality of the evidence to make a final merits determination regarding the petitioner's qualifications and achievements.  *Id*.  At this stage, the evidence must demonstrate "sustained national or international acclaim," and establish that the petitioner is one of a small percentage who has risen to the very top of their field of endeavor to be eligible for extraordinary ability designation.  8 U.S.C. § 1153(b)(1)(A)(i); 8 C.F.R. § 204.5(h)(2); *Rijal v. USCIS*, 772 F. Supp. 2d 1339, 1343 (W.D. Wash. 2011), *aff'd*, 683 F.3d 1030 (9th Cir. 2012).

Courts have interpreted the regulations governing the extraordinary ability designation as "extremely restrictive."  *Lee v. Ziglar*, 237 F. Supp. 2d 914, 918 (N.D. Ill. 2002); *see also Noorozi v. Napolitano*, 905 F. Supp. 2d 535 (S.D.N.Y. 2012).  Indeed, the EB-1 visa is informally known as "the 'Einstein' or 'genius' visa."  *Amin*, 24 F.4th at 387–88.  Courts have upheld USCIS's decisions to deny EB-1 petitions even where a

petitioner's work has been found to be of great value if the petitioner nevertheless fails to demonstrate the "elite level of accomplishment" required to satisfy the stringent criteria.  *See, e.g.*, *id*. at 394–95 (USCIS did not act arbitrarily in determining that a "talented chemical engineer who has made valuable contributions to oil and gas projects . . . was not 'extraordinary' but merely very good"); *Kazarian*, 596 F.3d at 1123 (noting that petitioner was a "well-respected, promising physicist," who "would have been an excellent candidate for an 'exceptional ability' visa" in the second preference, but upholding decision denying petition for EB-1 visa).

### III. FACTUAL AND PROCEDURAL BACKGROUND[4]

Plaintiff holds a Bachelor of Science in Chemical Engineering from Anna University in India and a Master of Science Degree in Civil and Environmental Engineering from Colorado State University ("CSU").  CSU employs Plaintiff as a Research Scientist and as a Senior Engineering Research Manager.  She has been employed as a Project Engineer by CSU, then as a Thermal Engineer for Abengoa Solar LLC, and later as an Engineering Project Manager at CSU.  She was promoted to her current position at CSU in August of 2017.

Plaintiff is a national of India with authorization to stay in the United States through an H-1B visa (a nonimmigrant classification for those performing certain

---

[4] The following factual summary is largely based on the briefing on the appeal, the Administrative Record, and documents submitted in support thereof.  Plaintiff submitted a Statement of Unopposed Facts, which the Court incorporates herein.  (ECF No. 15 at 4.)  Defendants have submitted a detailed, undisputed Factual Background, which the Court incorporates herein.  (ECF No. 18 at 6–15.)  Unless otherwise noted, all citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.  Facts disputed by the parties are noted as such.

services).  (*See* A.R.[5] at 35.)  On November 19, 2020, she filed a petition seeking classification as an EB-1 alien of extraordinary ability in the field of environmental engineering.  (*See id.* at 35–42.)  The petition included, among other things: (1) a brief from Plaintiff's counsel, (*id.* at 326–55); (2) her curriculum vitae, (*id.* at 360–64); (3) evidence of her Master of Science degree from CSU, (*id.* at 366–67); (4) evidence of her appointment as a Research Associate III in CSU's Department of Civil and Environmental Engineering, (*id.* at 369); (5) various documents with information about that department, (*id.* at 372–76); (6) a letter from Plaintiff, (*id.* at 378–85); (7) copies of various articles co-authored by Plaintiff, (*id.* at 414–28, 441–42); (8) certificates of completion from trainings, (*id.* at 429–30); (9) documentation from presentations that Plaintiff gave at conferences and/or forums, (*id.* at 431–40, 443–95); (10) internet printouts purporting to show how many times her articles had been cited by others in the field, (*id.* at 497–505); (11) evidence of citations by other researchers to her work, (*id.* at 507–21); (12) evidence of her work as a peer-reviewer, (*id.* at 523–30); (13) evidence of her technical proposals and project reports, (*id.* at 532–738); (14) evidence of an invitation to present at the Pentagon as part of a group of CSU employees, (*id.* at 740–52); and (15) nine letters of support, (*id.* at 370–71, 387–412).

In the brief accompanying her petition, Plaintiff did not claim to have received a one-time achievement such as a major, internationally recognized award.  (*See id.* at 326–55.)  Rather, she proffered to have met four of the ten regulatory criteria: (1) criterion four, judging the work of others in the same or allied field; (2) criterion five, original scientific, scholarly, artistic, athletic, or business-related contributions of major

---

[5] Citations to the Certified Administrative Record (ECF Nos. 11-1 & 11-2) are denoted "A.R."  Pin cites are to the red numbers at the bottom of the pages.

significance in the field; (3) criterion six, authorship of scholarly articles in the field; and (4) criterion eight, performance in a leading or critical role for organizations that have a distinguished reputation.  (*Id.* at 330.)

## A.    USCIS's Request for Evidence

On December 3, 2020, USCIS issued a Request for Evidence.  (*See id.* at 120–26.)  USCIS found that the evidence demonstrated that Plaintiff met two of the regulatory criteria: (1) criterion four, judging the work of others in the same or allied field; and (2) criterion six, authorship of scholarly articles in the field.  (*Id.* at 121–24.)  However, USCIS found that the evidence was insufficient to demonstrate that Plaintiff satisfied criterion five (original contributions of major significance) or criterion eight (performance in a leading or critical role).  (*Id.*)

With respect to criterion five (original contributions of major significance), USCIS explained that "not every researcher who performs moderately valuable research has inherently made an original contribution to the academic field as a whole."  (*Id.* at 122.)  USCIS found that while the letters of support that Plaintiff provided were complimentary, the authors had not provided "specific detail[ed] examples of how [her] research has been of major significance to the field."  (*Id.*)  With respect to criterion eight (leading or critical role), USCIS noted that a letter of support from a CSU professor was "vague and does not provide specific information necessary to determine whether her role was leading or critical," and that the additional documentation only provided general information about CSU that was insufficient to establish that the university had a "distinguished reputation."  (*Id.* at 124.)  Accordingly, USCIS requested objective, documentary evidence demonstrating that Plaintiff satisfied criteria five and/or eight, and provided examples of the types of evidence that would suffice.  (*Id.* at 123–25.)

**B.**     **Plaintiff's Response**

On March 22, 2021, Plaintiff submitted her response to the Request for

Evidence.  (*See id.* at 127–47.)  With respect to criterion five (original contributions of

major significance), Plaintiff relied in part on the letters of support that she had

previously submitted, asserting that two of them explained how her contributions were

of major significance.  (*Id.* at 129–30.)  She also relied on previously submitted evidence

to assert that her articles had been widely cited.  (*Id.* at 130.)  Finally, Plaintiff submitted

the following new documentation: a new Google Scholar printout showing that her work

had accumulated several additional citations since her previous submission, (*id.* at 131);

five new letters of support, (*id.* at 151–166); additional "notable citations" to her work,

(*id.* at 168–94); copies of two licensing agreements for technologies that she developed,

(*id.* at 196–201); emails from other individuals in her field who had invited her to

contribute to their publications, (*id.* at 272–75); and new evidence of her work as a peer-

reviewer, (*id.* at 277–87).

With respect to criterion eight (leading or critical role), Plaintiff asserted that

USCIS had not acknowledged an organizational chart or U.S. News & World Report

rankings submitted with her original filing.  (*Id.* at 141, 145.)  She also asserted that the

evidence previously submitted included "significant information" about her job duties

and the ways in which she has been critical to CSU's activities.  (*Id.*)  Finally, she

submitted two new letters of support concerning her role at CSU (*id.* at 289–93), and

new evidence of CSU's various rankings (*id.* at 297–304).

**C.**     **USCIS's First Denial**

On April 13, 2021, USCIS denied Plaintiff's petition.  (*Id.* at 107–12.)  With

respect to criterion five (original contributions of major significance), USCIS found that

the additional documentation did not demonstrate that her original contributions were of major significance to the field as a whole.  (*Id.* at 110.)  USCIS acknowledged the Google Scholar printout showing 73 citations to her articles and found that number of citations reflected "that the field has taken some interest to the petitioner's work. However, it is not an automatic indicator that the petitioner's work has been of major significance to the field."  (*Id.*)  Although Plaintiff claimed that some of the citations to her work were "notable," she did not provide evidence to demonstrate the reason the citations were notable. USCIS further found that Plaintiff "demonstrated a number of citations in the aggregate; however, these citations do not demonstrate the impact of any one (1) article."  (*Id.*)  Finally, USCIS acknowledged that Plaintiff had submitted multiple letters of support, but noted that while such letters may be helpful, "the major significance of the beneficiary's work must be demonstrated by preexisting, independent, and objective evidence."  (*Id.* at 110.)  Since Plaintiff did not provide such evidence, USCIS found that she did not satisfy criterion five.  (*See id.*)

In relation to criterion eight, USCIS found that the additional letters that Plaintiff submitted "do not explain how [her] accomplishments went beyond a department or project of the organization or establishment and impacted the organization or establishment as a whole."  (*Id.* at 111.)  Accordingly, USCIS concluded that she had not satisfied criterion eight.  (*See id.*)

Since Plaintiff only established that she satisfied two of the ten criteria rather than the required three, USCIS did not conduct the second step of the analysis (the final merits determination) and denied the petition.  (*See id.* at 111–12.)

**D.     Filing of the Lawsuit**

On October 22, 2021, Plaintiff filed this lawsuit, seeking review of USCIS's

decision to deny the petition.  (*See* ECF No. 1.)  However, the parties jointly moved for an extension of time for Defendants to respond to the Complaint so that USCIS could reopen the petition and allow Plaintiff an opportunity to submit additional evidence. (*See* ECF No. 6.)

**E.    USCIS's Decision to Reopen the Petition**

On December 9, 2021, USCIS withdrew its initial decision and reopened Plaintiff's petition.  (A.R. at 65.)  On December 13, 2021, USCIS issued a Notice of Intent to Deny the petition (the "NOID").  (*Id.* at 403–52.)

The NOID again acknowledged that the evidence that Plaintiff previously submitted satisfied two of the criteria.  (*Id.* at 45, 49.)  However, USCIS explained that with respect to criterion five (original contributions of major significance), the evidence must demonstrate that Plaintiff's "contributions rise to the level of major significance in the field as a whole, rather than to a project or to an organization."  (*Id.* at 46.)  USCIS noted that the Google Scholar screen-print that Plaintiff previously submitted showed that she had published six articles between 2013 and 2019, and that one article had been cited fifty times.  (*Id.*)  The other articles were only cited between two and five times.  (*Id.*)  USCIS further noted that Plaintiff "did not submit any information or evidence distinguishing between the number of self-citations versus the number of independent citations."  (*Id.*)

USCIS further noted that with respect to a Clarivate Analytics screen print that Plaintiff had submitted as another measure of the citations to her articles, she had similarly not provided any evidence as to whether the data included any self-citations. (*Id.*)  Finally, USCIS noted that Plaintiff's research fields are heavily cited fields, and that she did not provide "any independent objective documentary evidence showing

citations, including self-citations, are evidence that her original contributions have been of major significance in the field."  (*Id.* at 48.)

With respect to the letters of support that Plaintiff had previously provided, USCIS found that they did not show that her "published work has been of major significance in the field, not just a district or industry," or that her work had "impact beyond [her] employer and clients or customers."  (*Id.* at 46–47.)  USCIS noted that "[v]ague solicited letters from local colleagues that do not specifically identify contributions or provide specific examples of how those contributions influenced the field are insufficient."  (*Id.* at 47–48.)

With respect to Plaintiff's claim that she had been invited to present her work to various federal agencies, USCIS noted that the documentary evidence only showed that she was among a group of five individuals from CSU "granted clearance to present a slide show to the [U.S. Air Force]."  (*Id.* at 48.)  USCIS found that Plaintiff had not provided any evidence that her research work was actually accepted and implemented by any of the federal agencies.  (*Id.*)  With respect to evidence of grants that CSU had received, USCIS found that the agreements "do not identify [Plaintiff] as one [of] the two [CSU] researchers who are participating" in the grants, and that there was no evidence that Plaintiff's work was the basis for the grants.  (*Id.*)  And with respect to the licensing agreements that Plaintiff previously provided, USCIS found that there was no evidence "showing either licensing agreement was related to, or based upon, research work patented to" Plaintiff.  (*Id.*)  Finally, USCIS explained that it had considered the letters of support that Plaintiff had previously provided, but that the letters were "insufficient to form the cornerstone of [her] claim."  (*Id.*)

With respect to criterion eight, USCIS noted that the organizational charts that Plaintiff previously provided listed her as the only Research Associate/Scientist, but the website for CSU's Department of Civil and Environmental Engineering showed that the department actually employed six Research Associate IIIs (the title held by Plaintiff), one Research Associate IV (presumably a higher position than Research Associate III), and other individuals.  (*Id.* at 49.)  Thus, USCIS found that there was insufficient evidence to show that Plaintiff's position was leading or critical in comparison to the department head or the sole department Research Associate IV.  (*Id.* at 49–50.) USCIS further found that there was no evidence that Plaintiff's work was the basis for the various federal grants on which she had relied heavily in her previous submissions. (*Id.* at 50.)  Finally, USCIS noted that it was unclear why Plaintiff chose to submit a letter explaining her role from a professor rather than the department head.  (*Id.*)

The NOID provided Plaintiff with 30 days to submit additional documentation in support of her petition, and provided specific examples of the types of evidence that would suffice.  (*Id.* at 50–51.)

### F.      Plaintiff's Response to the NOID

On January 13, 2022, Plaintiff responded to the NOID.  (*Id.* at 78–93.)  With respect to criterion five (original contributions of major significance), Plaintiff asserted that the NOID did not mention "numerous pieces of provided evidence" concerning the reputations of the journals that have published her work and the number of citations to her work.  (*See id.* at 79.)  In a contention the Court finds perplexing, she further asserted that there was no need to present evidence differentiating between self-citations and independent citations to her work.  (*Id.* at 80.)  However, she submitted a new Google Scholar printout showing that there were now 90 total citations to her

published work, and a new Clarivate Analytics printout showing that her most-cited paper continued to rank in the top 10% most cited papers from 2014 in the field of Environment/Ecology.  (*Id.* at 80–81, 96–98.)  With respect to the NOID's findings concerning the other evidence that she had previously submitted, Plaintiff disputed those findings but did not provide any new evidence for USCIS to consider.  (*See generally*, *id.* at 81–86.)

With respect to criterion eight, Plaintiff asserted that the fact that other individuals held the same title as her was irrelevant to the determination of whether she served in a leading or critical role at CSU.  (*Id.* at 86.)  She disputed the NOID's findings concerning the additional evidence she previously submitted, but the only new evidence she provided was a list of the names and position titles of the other research associates in her department.  (*See generally, id.* at 86–91, 104–05.)

## G.  USCIS's Final Denial

On January 31, 2022, USCIS issued a final denial of the petition (the "Final Decision").  (*Id.* at 1–11.)  With respect to criterion five (original contributions of major significance), USCIS noted that the website for Clarivate Analytics stated that "'[c]itation frequency is highly skewed, with many infrequently cited papers and relatively few highly cited papers.  Consequently, citation rates should not be interpreted as representing the central tendency of the distribution."  (*Id.* at 7–8.)  Therefore, USCIS found that Plaintiff had not demonstrated that the number of citations to her published articles was an indicator of the major significance of her research in the field.  (*Id.* at 8.)  USCIS again found that the citations reflected on the Google Scholar printout did not separate self-citations from independent citations.  (*Id.*)  USCIS acknowledged that Plaintiff had published articles in highly ranked publications, but found that publication in

a highly ranked journal "in-and-of-itself, is not an indication that the [her] contributions have been of major significance in the field of endeavor." (*Id.*)  Finally, USCIS noted that it had considered the various letters of support but found that the evidence did not show that Plaintiff's contributions had been of major significance in the field. (*Id.* at 8–9.)

With respect to criterion eight, USCIS explained that the criterion "anticipates that a leading role should be apparent by its position in the overall organizational hierarchy and that it be accompanied by the role's matching duties." (*Id.* at 9.)  USCIS found that Plaintiff had not submitted any evidence that the proposals to various federal agencies on which she relied were actually accepted, did not provide evidence that she alone was responsible for securing various grant or cooperation agreements that CSU received, and that she had not demonstrated that her role was leading or critical within the hierarchical structure of CSU.  (*See id.* at 10–11.)  Since Plaintiff only satisfied two of the ten criteria rather than the requisite three, USCIS did not move onto the second step of the analysis (the final merits determination) and denied the petition. (*Id.* at 11.)

## IV. ANALYSIS

**A.     Whether USCIS Correctly Applied the Criteria under 8 C.F.R. § 204.5(h)(3)**

Plaintiff argues that USCIS has added novel requirements to the EB-1 visa category that are not found in 8 C.F.R. § 204.5(h)(3)(v), namely that "an original contribution must be supported by exhaustive evidence far beyond the 'preponderance of the evidence' as required by the agency's long-standing policy." (ECF No. 15 at 12.) Specifically, Plaintiff challenges USCIS's purported "novel evidentiary requirement" concerning criterion five, which she argues requires her to show that her work "fundamentally changed or significantly advanced the field as a whole." (*Id.* at 14.)  She

also argues that with respect to criterion eight, "USCIS seems to be inferring [*sic*] that hierarchical status at an institution means more than the type, amount, and quality of research performed by members of that institution."  (*Id.* at 22.)

The Court finds that Plaintiff's argument is without merit.  USCIS properly articulated and applied the burden of proof in this case.  In its April 13, 2021 denial of Plaintiff's petition, USCIS stated and applied the burden of proof to establish eligibility, noting that petitioner must prove "by a preponderance of the evidence" that she is fully qualified for the benefit sought.  (A.R. at 112.)  On December 13, 2021, in the NOID, USCIS again correctly stated and applied the same burden of proof.  (A.R. at 11.)  And in its January 31, 2022 Final Decision, USCIS also stated and applied the correct burden of proof.  (A.R. at 50.)

With respect to criterion five, the statute defines the term "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor."  8 U.S.C. § 204.5(h)(1)(2). Moreover, an EB-1 petition must "be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise."  *Id*. at § 204.5(h)(3).  Finally, criterion five requires "evidence" of "contributions of major significance in the field."  *Id*. at § 204.5(h)(3)(v).

The Court concludes that the plain language of the statute supports USCIS's determination that Plaintiff failed to satisfy criterion five because she did not demonstrate that she has *already* made contributions of major significance to the field of environmental engineering.  USCIS's conclusions that Plaintiff did not show that her work "fundamentally changed or significantly advanced the field as a whole" (A.R. at 9)

imposes no additional or novel requirements on Plaintiff; instead, this quoted language is merely another way of saying that Plaintiff has failed to demonstrate contributions of major significance in the field.  The Court finds that USCIS properly applied criterion five.

With respect to criterion eight, Plaintiff must provide evidence that she "has performed in a leading or critical role for organizations or establishments that have a distinguished reputation."  8 C.F.R. § 204.5(h)(3).  In its decision denying her petition, USCIS explained that criterion eight "anticipates that a leading role should be apparent by its position in the overall organizational hierarchy and that it be accompanied by the role's matching duties" and that a "critical role should be apparent from the self-petitioner's impact on the organization or the establishment's activities."  (A.R. at 9.) Based on the regulatory language, the Court concludes that it was reasonable for USCIS to interpret criterion eight to require that the evidence show Plaintiff's leading or critical role in the overall hierarchy of the organization.  *See Liu v. Mayorkas*, 2021 WL 5578572, at *6 (D.D.C. Nov. 30, 2021) ("contention that the regulation itself does not require a leading or critical role with respect to an entire organization, as opposed to a department or component within it, is belied by the words of the regulation itself").

Defendants note in their brief, and the Court agrees, that Plaintiff does not provide any specific explanation to support her assertion that USCIS applied an incorrect standard.  (ECF No. 18 at 17.)  Proving this point is the language Plaintiff deploys to make her argument: "USCIS *seems to be* adding novel requirements" to the EB-1 category and USCIS "*appears to be* . . . imposing a novel evidentiary requirement[.]"  (ECF No. 15 at 11–12, 14 (emphasis added).)  Even *Plaintiff* appears

unsure as to whether USCIS acted outside its authority—which the Court determines it did not.

**B.    Whether USCIS Discounted Competent Evidence and Expert Testimony and Failed to Consider the Record as a Whole**

  1. <u>Criterion Five</u>[6]

First, Plaintiff argues that USCIS improperly evaluated the 11 expert opinion letters she submitted, observing that USCIS "barely mentions" these letters except for briefly discussing McQuarrie, Morse and Motlagh's letters.  (ECF No. 15 at 15–18.)  She also asserts that USCIS has "discount[ed]" or "wholly ignore[d]" the other eight letters. (*Id.* at 21.)  Further, she contends that USCIS's finding that the letters did not specifically identify her contributions or provide examples of how those contributions have influenced the field is against the weight of the evidence.  (*Id*. at 19.)

Plaintiff's contentions are not supported by the record.  First, the Court rejects Plaintiff's implied assertion that USCIS must explicitly consider every letter she submitted.  She points to no case law—ostensibly because none exists—requiring USCIS to explicitly address every letter.  Moreover, at least one court has determined that the fact that "the agency did not list the letters of recommendation does not mean that its rejection of them is legal error."  *Guida v. Miller*, 2021 WL 568850, at *9 (N.D. Cal. Feb. 16, 2021) (citing *Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010) ("[T]he [agency] does not have to write an exegesis on every contention.  What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not

---

[6] Plaintiff does not argue that USCIS's reasoning with respect to the citations to her work was arbitrary and capricious, so the Court will not address this issue.

merely reacted.") (cleaned up by *Guida* court)).  Here, USCIS listed the letters it received (A.R. at 5–6) and explicitly stated that it "has considered the letters from experts submitted as evidence" (A.R. at 9).  It did not discount or wholly ignore the letters.

After Plaintiff submitted her experts' letters of support, in the NOID, USCIS explained that "[v]ague, solicited letters from local colleagues that do not specifically identify contributions or provide specific examples of how those contributions influenced the field are insufficient."  (A.R. at 47–48.)  USCIS further advised Plaintiff as to the type of letters which would demonstrate that she met criterion five, specifically stating that "[l]etters and testimonies, if submitted, must provide as much detail as possible about the beneficiary's contribution and must explain, in detail, how the contribution was 'original' . . . and how they were of 'major' significance."  (A.R. at 51.)  Moreover, "[g]eneral statements regarding the importance of the endeavors which are not supported by documentary evidence are insufficient."  (*Id.*)  USCIS explained in even greater detail what information might be included in subsequent letters, which the Court will not reiterate here.  (*Id.*)

It is noteworthy that in response to the NOID, Plaintiff did not submit any additional letters or testimonials.  (A.R. at 78–106.)  The Court's review of USCIS's decision reveals that the agency provided clear reasons for its determination that the letters did not support a finding that Plaintiff had met criterion five.  For example, USCIS noted that Mr. McQuarrie stated that Plaintiff cooperated with his organization on two projects.  (A.R. at 5.)  After describing in detail statements Mr. McQuarrie made in his letter, USCIS observed that "Mr. McQu[arrie did not identify the manner in which the

self-petitioner's incremental advancement of the field's knowledge has resulted in any breakthroughs that have already impacted the field, or has resulted in any contributions of major significance in her field."  (A.R. at 5.)  With respect to Dr. Morse's letter, USCIS explained that Dr. Morse failed to provide evidence of Plaintiff's impact beyond her employer, clients, or customers.  (A.R. at 6.)  Dr. Motlagh's letter suffered similar deficiencies, according to USCIS.  (A.R. at 6.)  As these explanations highlight, USCIS explained its reasoning as to why the letters were insufficient and allowed Plaintiff the opportunity to supplement the record, which she did not do.

USCIS considered Plaintiff's evidence and credited her accomplishments but determined that she did not meet her burden of proving that her work was of "major significance" to her field.  Because Plaintiff does not show that the agency failed to consider evidence or explain its reasoning, USCIS's determination on criterion five was not arbitrary and capricious.  *See Mishra v. Richardson*, 2021 WL 1566071, *5 (E.D. Va. April 20, 2021) (finding that USCIS's "evaluation of the expert letters was clearly rational and within its discretion to decide how much weight to give the letters," and ultimately holding that while "the record shows that plaintiff is a talented and well respected business analyst within his circle . . . the record does not show that plaintiff has received the national or international acclaim for his work that is required in order for such a unique visa to be awarded").

### 2.   Criterion Eight

Regarding criterion eight, Plaintiff first argues that USCIS improperly reviewed evidence of her work on Department of Defense ("DOD") funded projects.  (ECF No. 15 at 22.)  Next, she takes issue with USCIS's statement that "[t]he evidence of record lacks objective documentary evidence showing that [Ms. Karim's] role is more leading or

critical to the educational entity that employers her, than a department head,"
complaining that USCIS "seems to be inferring [*sic*] that hierarchal status at an
institution means more than the type, amount, and quality of research performed by
members of that institution."  (*Id.*)  Plaintiff quotes some of her attorney's arguments
from the Administrative Record, lists several citations to the Administrative Record, and
develops this argument no further, instead resting on her legal arguments related to
criterion five.[7]

However, the Court finds that USCIS's evaluation of criterion eight was not
arbitrary and capricious.  To the contrary, as with criterion five, USCIS explained why
Plaintiff's petition was deficient and gave her ample opportunity to supplement the
record, which she failed to do.

In its Final Decision, USCIS explained that Plaintiff's evidence showed her role
on various projects within CSU's Department of Civil and Environmental Engineering
but not within the university as a whole.  (A.R. at 9.)  USCIS observed that the two
organizational charts Plaintiff submitted showed that she was the only Research
Associate/Scientist.  (A.R. at 9.)  However, the page for the Department of Civil and
Environmental Engineering showed that the Department employed six Research
Associate IIIs, which is Plaintiff's position, only one Research Associate IV, and

---

[7] In the portion of her brief addressing criterion eight, Plaintiff makes a brief, conclusory
argument, quotes portions of her attorney's response to the NOID, lists but does not analyze a
long string of citations to the Administrative Record, and then merely states that she
"incorporates the legal authority and reasoning from her discussion of the agency's failure to
properly apply 8 C.F.R. §204.5(h)(3)(v), to its failure to properly apply 8 C.F.R.
§204.5(h)(3)(viii)."  (ECF No. 15 at 22–23.)  *See United States v. Hunter*, 739 F.3d 492, 495
(10th Cir. 2013) (cursory argument not meaningfully developed by any analysis or citation is
deemed waived).  Although the Court does not deem Plaintiff's arguments concerning criterion
eight waived, they are woefully underdeveloped and unhelpful to the Court's evaluation of her
appeal.

numerous other individuals.  (A.R. at 9.)  Although she had the opportunity to provide

additional evidence after the NOID, she failed to provide documentation explaining the

differences among the positions or how her role was "leading or critical," as required by

the regulations.  In the Final Decision, USCIS clearly explained its reasoning for finding

that Plaintiff had not satisfied criterion eight: "No information was provided to show that

[Plaintiff's] position is leading or critical in comparison to the executive leadership in

charge of the overall success of the university or the department head."  (A.R. at 9.)  In

her brief, Plaintiff fails to analyze this issue, and her position within CSU's hierarchy

remains unclear.[8]  (ECF No. 15 at 22–23.)

The record shows that USCIS also addressed the letters of support concerning

the Plaintiff's work on DOD projects.  Specifically, USCIS considered a letter from a

CSU professor, Dr. Kenneth Carlson, who wrote about Plaintiff's role on various

projects.  (A.R. at 10.)  However, USCIS concluded that although Dr. Carlson claimed

that Plaintiff provides "vital leadership and expertise to her work with the DOD," he failed

to include any information or objective documentary evidence to support his statements.

(*Id.*)  Additionally, Plaintiff failed to provide evidence that explained her role in

comparison with the head of the department or the only Research Scientist IV.  Finally,

Plaintiff completely fails to address whether she satisfied her burden to demonstrate

that CSU has a "distinguished reputation" within the meaning of criterion eight.

In sum, Plaintiff disagrees with the conclusions USCIS drew from the record. Yet,

USCIS's lengthy discussion of the evidence, replete with examples from the record,

---

[8] To the extent Plaintiff believes that her string of citations (without further explanation or analysis) to the Administrative Record somehow speak for themselves, the Court disagrees. The Tenth Circuit has determined that a court is "not charged with making the parties' arguments for them."  *Meyer v. Bd. of Cnty. Comm'rs*, 482 F.3d 1232, 1242 (10th Cir. 2007).

demonstrates that it engaged in a reasoned decisionmaking process, thus satisfying the highly deferential arbitrary and capricious standard of review. *See Krasniqi v. Dibbins*, 558 F. Supp. 3d 168, 189 (D.N.J. 2021) (within reason to ask for specific duties and decline to rely on a job title to suffice as evidence for a "leading or critical role"); *Visinscaia*, 4 F. Supp. 3d at 135. Without sufficient detail regarding Plaintiff's role within the university, it was reasonable for USCIS to conclude that Plaintiff could not satisfy criterion eight.

***

The record shows that Plaintiff is a talented and well-respected environmental engineer within her circle, but the record does not show that she has received the national or international acclaim for her work that is required in order for such a unique visa to be awarded. *Mishra*, 2021 WL 1566071, at *5. Accordingly, plaintiff does not meet the "strict" definition of "extraordinary ability," *Visinscaia*, 4 F. Supp. 3d at 131, and has not made the required showing that the USCIS's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

**V. CONCLUSION**

For the reasons set forth above, the Court ORDERS:

1.      Plaintiff's request for summary judgment (ECF No. 15) is DENIED;

2.      USCIS's decision to deny Plaintiff's EB-1 visa petition is AFFIRMED;

3.      The Clerk shall enter judgment in favor of Defendants John Allen, Merrick B. Garland, Alejandro Mayorkas, and Ur Mendoza Jaddou and against Plaintiff Asma Hanif Abdul Karim;

4.      The parties shall bear their own costs; and

5.      The Clerk shall terminate this action.

Dated this 19th day of July, 2023.

BY THE COURT:

William J. Martínez
Senior United States District Judge